UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

_____

| | | |
|---|---|---|
| MARSHALL RAY MILLER, | ) | C/A No.: 4:15-cv-2672-TLW-TER |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **Report and Recommendation** |
| | ) | |
| | ) | |
| JOSEPH L. MCFADDEN, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | |

_____ )

Petitioner, Marshall Ray Miller, filed a *pro se* petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254[1] on July 6, 2015. (Doc. #1). Respondent filed a

motion for summary judgment on December 16, 2015, along with a return and

memorandum. (Docs. #28 and #29). The undersigned issued an order filed December

29, 2015, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising

Petitioner of the motion for summary judgment procedure and the possible

consequences if he failed to respond adequately. (Doc. #31). Petitioner filed a

response in opposition on March 28, 2016. (Doc. #45).

_____

[1] This habeas corpus case was automatically referred to the undersigned United States Magistrate
Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02(B)(2)(c),
DSC. Because this is a dispositive motion, this report and recommendation is entered for review
by the district judge.

## **PROCEDURAL HISTORY**

The procedural history as set forth by the Respondent has not been seriously disputed by the Petitioner in his response. Therefore, the undersigned will set out the undisputed procedural history, in part, as set forth by the Respondent.

Petitioner is currently incarcerated in Tyger River Correctional Institution pursuant to orders of commitment from the Clerk of Court for Statewide Grand Jury. Petitioner was indicted on September 10, 2002, for Conspiracy to Traffic Methamphetamine (2002-GS-47-0032). Petitioner was represented by Kim R. Varner, Esquire. Petitioner's jury trial was held in January 2004. Petitioner did not appear for his trial and was tried absentee. He was found guilty as charged. The Honorable Wyatt T. Saunders, Jr. sentenced Petitioner to confinement for a period of twenty-five years (25).[2]

### **Direct Appeal**

A timely Notice of Appeal was served on behalf of Petitioner, and an appeal was perfected. On appeal, Petitioner was represented by Robert Dudek, Chief Appellant Defender of the South Carolina Division of Appellate Defense, Commission on Indigent Defense. In his Final Brief, Petitioner raised the following arguments:

---

[2] The sealed sentence by the Honorable Wyatt T. Sanders was opened on August 24, 2004.

      I.     Whether the court erred by admitting appellant's statements into evidence where those statements were given to law enforcement as a result of promises of leniency for his cooperation, particularly where even the state's evidence showed appellant was offered a plea bargain that would have substantially reduced his sentence in consideration for his statements and cooperation?

      II.    Whether the court erred by refusing to enforce the plea agreement where appellant's attorney testified under oath that the State offered a recommended sentence of 8 to 12 years in return for appellant's cooperation, that appellant accepted that offer, and where appellant relied to his detriment on that plea agreement by giving a plethora of information about the meth conspiracy to the State?

(Final Brief of Appellant, App. 1908).

The Respondent, through assistant attorney general, DeWayne Pearson, made a Final brief of Respondent on April 9, 2007. App.p. 1881-1904. The South Carolina Court of Appeals affirmed the Applicant's conviction and sentence on October 19, 2007. State v. Marshall Miller, Op. No. 4307, 375 S.C. 370, 652 S.E.2d 444 (S.C.Ct. App. 2007). The Court of Appeals denied the Applicant's Petition for Rehearing on January 17, 2008.

The South Carolina Supreme Court denied Petitioner's petition for writ of certiorari on November 7, 2008, and the Remittitur was issued on November 10, 2008. The Remittitur was issued by the South Carolina Court of Appeals on November 10, 2008.

**PCR**

Petitioner filed his application for post-conviction relief (PCR) on April 20, 2009. (App. 1935). In the PCR application, Petitioner argued that he was being held in custody unlawfully for the following reasons:

1.    Ineffective Assistance of Trial Counsel;

2.    Ineffective Assistance of Appellate Counsel; and

3.    "Denial of 5th, 6th, and 14th Amendment rights."

(App. 1937-1985).

An evidentiary hearing was held before the Honorable R. Lawrence McIntosh on November 30, 2012, at the Laurens County Courthouse. (App. 2002-2014). The Petitioner was present at the hearing and was represented by John D. Compton, III, Esquire. Ashley A. McMahan, Esquire of the South Carolina Attorney General's Office, represented the Respondent. Petitioner's particular allegations regarding ineffective assistance of counsel were set forth in the attachments to his application as summarized in the Order of Dismissal as follows:

1.    Was counsel ineffective for conceding Applicant's guilt during the trial?
2.    Was counsel ineffective for failing to object to the highly prejudicial "opinion testimony" of a State's witness who had not been qualified as an expert by the trial court? (re: Agent Sonnefeld.)
3.    Was counsel ineffective for failing to object to the highly prejudicial "opinion testimony" of a State's witness who had not

4

been qualified as an expert by the trial court? (re: McCallister.)

4.    Was counsel ineffective for failing to object to the erroneous reasonable doubt instruction?

5.    Was counsel ineffective for failing to make a motion *in limine* challenging the admissibility of the alleged evidence retrieved from the State of Georgia, due to improper chain of custody of the alleged evidence, as well as the unreliability of the evidence?

6.    Was counsel ineffective for failing to object to the trial court's instructions to the jury that impermissibly commented on the facts of the case and thus in doing so prematurely directed a verdict for the state?

7.    Was counsel ineffective for failing to object to deficiencies in the indictment prior to trial as mandated by SC Code §17-19-90?

8.    Was counsel ineffective for failing to motion the court for a bill of particulars based on the vagueness of the indictment?

(App. 2122).

During the hearing, Petitioner testified on his own behalf. Kim R. Varner, Esquire and Robert M. Dudek, Esquire testified at the hearing. Judge McIntosh denied the PCR application and filed his order of dismissal on March 25, 2013. (App. 2118-2130).

Thereafter, Petitioner submitted a Rule 59(e) motion, which was denied in an order filed May 7, 2013. (App. 2140-2141).

## PCR APPEAL

Petitioner filed an appeal from the dismissal of his PCR appeal and waived his right to appointed appellate counsel filing a *pro se* petition for writ of certiorari on

5

October 14, 2014, raising the following allegations:

1. Did the circuit court err in holding petitioner's trial counsel was not ineffective in conceding petitioner's guilt during opening and closing arguments?

2. Did the circuit court err in holding petitioner's trial counsel was not ineffective in failing to object to the trial court's constitutionally deficient hybrid reasonable doubt and circumstantial evidence charge and was the holding based on an error of clearly established law?

3. Did the circuit court err in holding petitioner's trial counsel was not ineffective in failing to object to improper opinion testimony of witnesses not qualified by the trial court to give expert opinions on scientific matters?

4. Did the circuit court err in holding petitioner's trial counsel was not ineffective in failing to request a suppression hearing for evidence retrieved from Georgia in which the chain of custody was unreliable?

5. Did the circuit court deny petitioner access to discovery materials to research and amend federal constitutional claims and did that denial render the PCR hearing an inadequate corrective process?

6. Did the circuit court deny petitioner the right to amend and raise a federal constitutional claim that the assistant attorney general misrepresented facts about the State Grand Jury plea process during the Jackson v. Denno hearing?

7. Did the circuit court deny petitioner the right to amend and raise a claim of ineffective assistance of

counsel when trial counsel failed to secure the plea agreement in writing?

8.    Did the circuit court deny petitioner the right to amend and raise a federal constitutional claim of personal jurisdiction where both the United States Bureau of Prisons and the State of South Carolina forfeited jurisdiction over petitioner's sentence(s)?

(Petition for writ of certiorari).  The State filed a Return.

Petitioner's PCR action concluded upon the Supreme Court of South Carolina denying the petition for writ of certiorari on May 7, 2015, and issuing its Remittitur on May 26, 2015.

## HABEAS ALLEGATIONS

Petitioner raised the following allegations in his petition, quoted verbatim:

GROUND ONE:             Defense counsel correctly argued appellant's statements to law enforcement were clearly given in reliance upon the promise of leniency. As such these statements were not admissible against appellant.

Supporting facts:       Petitioner cooperated with Asst, A/G in exchange for entering a plea of guilty in consideration of the 12 year sentence. When the State reneged on the plea agreement the statement(s) given inconsideration are inadmissible against petitioner.

GROUND TWO:             The trial judge erred by ruling the promise of 8 –12 years sentence in the plea offer, which

7

petitioner accepted was not binding on the State.

Supporting Facts:    Counsel testified Asst. A/G offered petitioner and 8 –12 year sentencing recommendation in consideration for his cooperation. The offer was conveyed to and accepted by petitioner. The trial court refused to enforce the agreement.

GROUND THREE:    Counsel was ineffective in conceding petitioner's guilt during opening and closing arguments.

Supporting Facts:    During opening arguments, trial counsel conceded Petitioner's guilt and removed his presumption of innocence with multiple statements such as "they were illegal and nobody is going to argue that"; and in closing argument such statements as "Marshall Miller was engaged in criminal activity."

GROUND FOUR:    The PCR Court erred in finding trial counsel provided effective assistance where counsel failed to object to the hybrid reasonable doubt and circumstantial evidence jury charge.

Supporting Facts:    The trial court's jury instructions regarding reasonable doubt and circumstantial evidence were hybrid, confuse the two principals and limited the jury's understanding or application of reasonable doubt.

GROUND FIVE:    Counsel failed to object to improper opinion testimony of witness(es) not qualified as an expert.

Supporting Facts:    SLED Agent Sonnefeld not qualified as an

8

expert, interjected inadmissible testimony on scientific evidence. [App. 305 –306] involving chemicals and trial counsel failed to enter an objection; and Major Ronnie McAllister interjected scientific opinion testimony about a chemical analysis's [App. 445] to which counsel did not object.

GROUND SIX:     Trial counsel was ineffective in failing to request a suppression hearing for evidence retrieved from Georgia in which the chain of custody was unreliable.

Supporting Facts:     Saylors, a Georgia resident, contacted and led Abbeville Police to certain unknown items allegedly left with Saylors by Petitioner, where Saylors had taken said items and stored them on the property of an unknown party and trial counsel failed to request a suppression hearing based on the chain of custody.

GROUND SEVEN:     The PCR Court denied Petitioner access to discovery materials to research and amend federal constitutional claims which rendered the State Court evidentiary hearing an inadequate corrective process.

Supporting Facts:     Petitioner sought State Grand Jury material in which to develop and/or amend federal constitutional claims involving exculpatory material or theories of defense both at trial and on collateral review. Petitioner made a prima facie showing the State (and its agent DOC) intentionally manipulated the statute authorizing Petitioner's access, which held information in secrecy and denied Petitioner the right to discovery and access to the court(s).

9

GROUND EIGHT:          The PCR Court denied Petitioner the right to amend and raise the federal constitutional claim that the assistant attorney general misrepresented facts about the State Grand Jury plea process during the *Jackson v. Denno* hearing.

Supporting Facts:      The PCR Court denied Petitioner the right to amend in a federal constitutional claim concerning Asst. A/G Evans misrepresenting facts of the State Grand Jury  plea process with the State reneged on the plea and in turn used the statements given in consideration against the Petitioner at trial. The failure to allow the amendment at the evidentiary hearing render the state proceeding an inadequate corrective process.

GROUND NINE:           The PCR Court denied petitioner the right to amend and raise the claim of ineffective assistance of counsel when trial counsel failed to secure the plea in writing.

Supporting Facts:      Petitioner sought to raise a matter of counsel's failure to secure the plea agreement in writing on a Rule 59(e) motion which denied Petitioner a  full and fair hearing and an adequate corrective process where the PCR Court deemed it would hear issues only raised in the PCR petition.

GROUND TEN:            The PCR Court denied Petitioner the right to amend and raise the  federal constitutional claim of personal jurisdiction where both the State of South Carolina and the Federal Bureau of Prisons forfeited jurisdiction over Petitioner's sentences.

10

Supporting Facts:            Petitioner sought and was denied at the evidentiary hearing and on Rule 59(e) to raise federal constitutional issue of personal jurisdiction of federal v. state jurisdiction over his person and sentence. South Carolina forfeited jurisdiction when the federal government obtained Petitioner from Georgia after Petitioner was sentenced in South Carolina and the BOP processed Petitioner into the Federal Bureau of Prisons, and after commencing of service of the federal sentence under 18 U.S.C. § 3585, forfeited jurisdiction by returning Petitioner to South Carolina.

(Petition) (errors in original).

## STANDARD FOR SUMMARY JUDGMENT

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).

The moving party bears the burden of showing that summary judgment is

11

proper.  Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof.  Celotex, 477 U.S. 317.  Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial.  Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).  The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party.  Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991).  However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment.  Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992).  The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits."  Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings.  See Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any." Id. at 322; see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## STANDARD OF REVIEW

In addition to the standard that the court must employ in considering motions for summary judgment, the court must also consider the petition under the requirements set forth in 28 U.S.C. § 2254. Under § 2254(d),

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim-
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable

13

determination of the facts in light of the State court proceeding.

Thus, a writ may be granted if a state court "identifies the correct principle from [the Supreme] Court's decisions but unreasonably applies that principle of law" to the facts of the case.  Humphries v. Ozmint, 397 F.3d 206, 216 (4th Cir. 2005) (citing Williams v. Taylor, 529 U.S. 362, 413 (2000)).  However, "an 'unreasonable application of federal law is different from an incorrect application of federal law,' because an incorrect application of federal law is not, in all instances, objectively unreasonable." Id.  "Thus, to grant [a] habeas petition, [the court] must conclude that the state court's adjudication of his claims was not only incorrect, but that it was objectively unreasonable." McHone v. Polk, 392 F.3d 691, 719 (4th Cir. 2004).  Further, factual findings "made by a State court shall be presumed to be correct," and a Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## ANALYSIS

For background purposes, the facts[3] in this case as set forth in the opinion of the South Carolina Court of Appeals on direct review are as follows, quoted verbatim:

---

[3] A presumption of correctness attaches to state court factual findings. 28 U.S.C. §2244(e)(1); Evans v. Smith, 220 F.3d 306 (4th Cir. 2000).

14

In November 1999, local authorities began investigating a large methamphetamine conspiracy, referred to as "Crankdown." The State Law Enforcement Division ("SLED") began its investigation in 2002.

On September 10, 2002, the statewide grand jury indicted Miller and fourteen other individuals for conspiracy to traffic more than 100 grams of methamphetamine. Miller was arrested on September 24, 2002. Subsequently, Frank O'Neil, a SLED agent, attempted to obtain a statement from Miller. O'Neil declared the attempt was not fruitful because Miller only informed the agent about other people involved, not Miller's own involvement.

O'Neil averred defense attorney Kim Varner said Miller was willing to cooperate fully. As a result, O'Neil arranged for Miller to be interviewed by SLED agents Chester Bragg and Constance Sonnefeld. Bragg and Sonnefeld conducted three interviews with Miller. The first debriefing occurred on February 13, 2003, at the Laurens City Police Department. Bragg established that Miller was advised of his rights. He was coherent and not threatened in any way. Both agents professed that no plea agreements or promises of leniency were made during the meeting.

The second and third interviews between Marshall and SLED officers were conducted on February 25, 2003, and March 4, 2003. During all three sessions, Miller orally provided information concerning the methamphetamine conspiracy. At trial, Bragg confirmed Miller admitted using, "cooking," (making methamphetamine), and distributing methamphetamine. Additionally, Miller voluntarily provided Bragg with a handwritten, thirty-six page document prior to the second interview. This document listed names of various "cooks," locations where methamphetamine could be purchased, "cook" sites, people who assisted in "cooking" methamphetamine, charges of police misconduct, an illegal poker house, and various other related and non- related information.

Prior to trial, the court conducted a hearing pursuant to Jackson v. Denno. 378 U.S. 368, 84 S.Ct. 1774. 12 L.Ed.2d 908 (1964), to determine the voluntariness and admissibility of Miller's oral and written statements. The following colloquy occurred during the cross-examination of agent O'Neil at the Denno hearing:

15

Q:      When you initially sat down with Mr. Miller, not saying there was an agreement or anything, but was there a general discussion with Mr. Miller that if he would admit his involvement and fully cooperate that it was a possibility, not an agreement, that he could get a sentence of approximately fifteen years?

A:      No

Q:      Okay. Was there any discussion of fifteen years at that point in time? I'm not saying an agreement, but a general discussion?

A:      I told Mr. Miller that all he could do by cooperating was help himself, it was not going to hurt him. I did not refer to a particular time or to a sentence that he could possibly receive. I repeated several times, as I always do, that it's up to the judge that handles the case.

Varner testified on Miller's behalf during the Denno hearing and claimed Assistant Attorney General Jennifer Evans orally promised a plea deal of eight to twelve years  State v. Miller, 375 S.C. 370 (2007) 652 S.E.2d 444 in exchange for Miller's guilty plea and full cooperation with the investigation. However, Varner admitted he never memorialized the promise in writing. Varner contended Miller gave statements to authorities in reliance on the alleged eight-to-twelve-year deal. Although Varner averred he  communicated the details of the agreement to Miller in front of Bragg and Sonnefeld, neither agent recalled the number of years being mentioned. The following colloquy occurred during the cross-examination of Bragg at the Denno hearing:

Q:      And whether I misunderstood it or whether it was correct or not, do you recall me  telling Marshall Miller, "Marshall, I  just got off the phone with Jennifer [Evans]. If you testify or you give your cooperation," that, "you are in the eight to twelve

16

range and expect twelve ... you don't have to do this, this is your choice,  you're freely and voluntarily entering into  this, this is going to be your decision if you will take that range," whether I misunderstood my statement with [Evans] or whether that was correct or even if that was a lie, do you recall me making the statement  to [Miller] to  that effect?

A:    I do not recall any numbers being mentioned at all.

To the same line of questioning, Sonnefeld responded, "I don't remember numbers. I remember that  if he cooperated it would be taken into consideration."

Evans explained the only offer she extended was a formal, written plea agreement with a fifteen-year sentence. She denied  offering a plea with a sentence in the range  of eight to twelve years. In contrariety, Varner asserted Miller would not have provided information for a fifteen-year deal. "[Miller] has been in jail a couple of times, this gentleman is very jailhouse smart, he does know how to handle himself in that respect, he's very familiar with the system, so to speak...." The following colloquy occurred during the direct examination of Evans:

A:    The only time we ever make plea offers is when we send out formal written plea offers. What we do, we explain to them what we expect with cooperation, which is full cooperation, full debriefing, cooperation throughout the investigation, and at that point there is nothing promised except for the fact that we will take that cooperation into account. Mr. Miller was indicted for a 25 year offense ... we do explain to them there is really no way you can hurt yourself at this point, that we take the cooperation into account in  determining a sentence, but  I don't discuss sentencing and I don't discuss what they would be, because I don't know and if they are being fully honest with us.

17

> Q:    So, it would be safe to say, then, you have to get all
>        the information from the defendant before you can
>        even determine what offer you want to make them?
>
> A:    That is certainly the course of action that we do in all
>        of our Grand Jury cases.
>
> Q:    And is this particular instance did you make a
>        written plea offer?
>
> A:    Yes, I did.

The written plea offer was sent to Miller on April 29, 2003, in which the State offered a recommendation of fifteen years for him to plead guilty and fully cooperate. Miller had two opportunities to plead guilty but declined to do so.

Miller moved to enforce the purported eight-to-twelve-year plea agreement. The trial judge found Miller's statements were voluntary and denied his motion to enforce the plea agreement. Miller failed to appear for trial and was tried in his absence. The jury found him guilty and the trial judge imposed a twenty-five-year sentence.

State v. Miller, 375 S.C. 370, 652 S.E.2d 444, (Ct. App. 2008).

## **Ground One**

In Ground One, Petitioner argues that the trial court erred in admitting statements he made to law enforcement alleging the statements were induced by an unkept promise of a twelve-year sentence. Respondent contends that the state appellate court and trial court did not make an unreasonable application of United States Supreme Court's precedent where the state courts reasonably determined that

18

there were no direct or implied promises by the State.

This issue was raised in the direct appeal, and the South Carolina Court of Appeals denied the issue. The State Court of Appeals discussed the law and process for determining whether a statement is voluntary, the admissibility of statements, the voluntariness determination, and the totality of the circumstances. (Tr. 28-1, at 7-11). After discussing the appropriate law with regard to this issue, the court held as follows:

> In the case *sub judice*, Miller maintains his statements were not freely and voluntarily given because they were induced by a promise of an eight to twelve-year sentence. However, Miller was not present to testify, and the only person who testified at the <u>Denno</u> hearing that the promise existed was Varner, Miller's attorney. Unlike the circumstances in Peake,[4] in this instance three officers and Assistant Attorney general Evans denied any promise of leniency in exchange for Miller's statements. Although the officers and Evans told Miller it was in his best interest to cooperate, no one made any direct or implied promise of leniency. As a result, Miller's statements were made in the "hope" of leniency rather than as a consequence of a "promise."

> In ruling on the admissibility of Miller's statements, the trial judge had the opportunity in the <u>Denno</u> hearing to listen to the testimony, assess the demeanor and credibility of all witnesses, and weigh the evidence accordingly. In determining Miller knowingly, intelligently, and voluntarily made the statements the trial judge ruled:

>> The [c]ourt cannot conclude that the statements to Agents Bragg and Sonnefield were not freely voluntarily given after Mr. Miller was afforded all of his rights, warning and

---

[4] <u>State v. Peake</u>, 291 S.C. 138, 139, 352 S.E.2d 487, 488 (1987).

safeguards pursuant to the case law in such cases made and provided, or that the handwritten statement was not freely and voluntarily given.

Furthermore, the court instructed the jury to carefully scrutinize all the surrounding circumstances about and concerning such statement or statements before you give any weight to any alleged statement o[r] statements. You must be satisfied beyond a reasonable doubt that the statement was made by the accused person uninfluenced by promise of reward, threats of injury or diminution of his rights.

The trial judge analyzed the voluntariness of Miller's statements in compliance with the due process requirements. Luculently, the admission of Miller's statements at trial was not an abuse of discretion.

(Miller v. State, supra, Doc. #28-1 at 11).

The South Carolina Court of Appeals determined that the trial judge did not err in analyzing the voluntariness of Petitioner's statements in compliance with the due process requirements. The trial judge conducted a Denno hearing and had the opportunity to listen to the testimony, assess the demeanor and credibility of the witnesses, and weigh the evidence. The trial court found that based on the totality of the circumstances the statements were voluntary. The state court's factual determination regarding credibility is entitled to deference in this action. Cagle v. Branker, 520 F.3d 320, 324 (4th Cir.2008), (citing 28 U.S.C. § 2254(e)(1) (for a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear)); see also Marshall v. Lonberger, 459 U.S. 422, 434,

103 S.Ct. 843, 74 L.Ed.2d 646, (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them"). A presumption of correctness attaches to state court factual findings. 28 U.S.C. §2244(e)(1); Evans v. Smith, 220 F.3d 306 (4th Cir. 2000). The state court's determination was neither a decision that "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; nor a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(1), (2). Accordingly, it is recommended that Ground One be dismissed.

**Ground Two**

In Ground Two, Petitioner argues that the trial court erred in ruling that the alleged twelve-year promise was not binding on the state. Petitioner relies on the case of Santobello v. New York, 404 U.S. 257 (1971) to support his assertion that state prosecutors are obligated to fulfill the promises they make to defendants when those promises serve as inducements to defendants to plead guilty. Respondent asserts that this case is distinguishable from Santobello in that the trial court found there was no plea agreement for an 8-12 year sentence, Petitioner did not plead guilty, and,

21

therefore, there was nothing for the trial court to enforce. Respondent argues that Petitioner has not shown how the South Carolina Court of Appeals disregarded well-established federal law when it found no due process violation, and the state court did not unreasonably apply the mandates of the United States Supreme Court.

Petitioner contends that the promise of an eight to twelve-year sentence should have been enforced because the State's oral promise was binding as he detrimentally relied on it by disclosing the information the State desired. The court discussed the law with regard to the enforceability of plea offers. Specifically, the court noted that the law holds a plea agreement is only an "offer" until the defendant enters a court-approved guilty plea and defendant accepts the "offer" by pleading guilty. The court stated that "[u]ntil formal acceptance has occurred, the plea is not binding on the defendant, the State, or the court. This general rule is subject to a detrimental reliance exception." Santobello, 375 S.C. at 389, citing Reed v. Becka, 333 S.C. 676, 688, 511 S.E.2d 396, 401 (Ct. App. 1999) and Custodio v. State, 373 S.C. 4, 11, 644 S.E.2d 36, 39 (2007). In Santobello, the defendant pleaded guilty in exchange for a promise that the prosecutor would make no sentencing recommendation. However, after several delays, a new prosecutor handled the sentencing and recommended imposition of the maximum sentence. Defense counsel requested a continuance to obtain proof of the original prosecutor's promise, but the trial court denied the continuance. The trial

judge imposed the maximum sentence. In <u>Santobello</u>, the United States Supreme Court held that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." <u>Santobello</u>, 404 U.S. at 499. This case is distinguishable from <u>Santobello</u> in that Petitioner was not induced to enter a plea, there was no "offer," and he chose to proceed with his right to a jury trial.

The South Carolina Court of Appeals discussed state law and then held as follows:

> In the present case, the evidence indicates the communications between Evans and Varner about an eight-to-twelve-year sentence never reached the level of a promise or agreement. Evans testified the protocol in grand jury cases was to formally, in writing, extend a plea offer after the defendant was debriefed and the desired information obtained. In accordance with that practice, the only offer Evans ever made to Miller was a written plea agreement for fifteen years.
>
> Discussion between Evans and Varner about a range of potential sentences prior to Miller's debriefing were plea negotiations and cannot be construed as an "offer." Nothing in the testimony indicates Evans ever intended to agree to an eight-to-twelve-year plea. Miller was not present at trial and never expressed his understanding of the terms of the alleged "deal." Furthermore, Miller never accepted a plea offer by entering a guilty plea. Admittedly, Miller revealed information in the hope of securing a favorable plea. Nevertheless, without an affirmative promise of plea offer from the State of eight to twelve years, Miller's cooperation did not bind the State to accept his terms.

Miller v. State, 375 S.C. at 390.

Contrary to Petitioner's allegations, there is no violation of clearly established federal law. The South Carolina Court of Appeals found that discussions between the prosecutor and Petitioner's counsel about a range of potential sentences prior to Petitioner's debriefing were plea negotiations and cannot be construed as an "offer." Additionally, the court found that Petitioner never accepted a plea offer by entering a guilty plea. Without an affirmative promise or plea offer from the State of eight to twelve years, Petitioner's cooperation by revealing information in the hopes of securing a favorable plea did not bind the State to accept his terms. A presumption of correctness attaches to state court factual findings. 28 U.S.C. §2244(e)(1). Evans v. Smith, 220 F.3d 306 (4th Cir. 2000). This case is clearly distinguishable from Santobello because in Petitioner's case the state court found there was no breach of any promise made to Petitioner which has support in the state court record. The state court's conclusion is not contrary to, nor an unreasonable application of clearly established federal law, nor did it result in an unreasonable determination of the facts. Therefore, it is recommended that Respondent's motion for summary judgment be granted with respect to Ground Two.

**Ineffective Assistance of Counsel**

Grounds Three, Four, Five, and Six raise issues of ineffective assistance of

counsel. Therefore, the law with regard to ineffectiveness of counsel will be set forth and each issue subsequently addressed separately.

When presented with an application for habeas relief, the first inquiry by the court is to determine whether the claim raised in the petition was "adjudicated on the merits" by the state court. 28 U.S.C. §2254(d). If the claim was properly presented to the state court and the state court adjudicated it, the deferential standard of review set forth in §2254(d) applies and federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." Id. § 2254(d)(1),(2); see Williams v. Taylor, 529 U.S. at 398.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland, supra, the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) (quoting Strickland), reversed on other grounds, 476 U.S. 28 (1986). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Strickland, 466 U.S. at 694.

The court further held at page 695 that:

> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct . . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. (Emphasis added.)

Id.; Williams v. Taylor, 529 U.S. 362 (2000)(confirming the Strickland analysis).

**Ground Three**

In Ground Three, Petitioner argues ineffective assistance of counsel for conceding guilt by remarks made in the opening and closing statement. (See PCR transcript, p. 2027-2037). Petitioner argues that counsel's statements bolstered the State's case that he was guilty. At PCR, Petitioner argued that the statements made by his attorney were so prejudicial that they outweighed any evidence that tended to show guilt. (App. 2035-36). Respondent asserts that counsel's comments were "not a complete concession, but rather were a strategic attempt grounded in the evidence as presented to the jury. The petitioner has not shown that counsel was deficient in that choice of tactics. The state court's rejection of this claim and acceptance of the sound strategy was reasonable under <u>Strickland</u>. . . " (Respondent's memorandum, p. 45). This issue was raised and ruled upon by the PCR court and raised in the petition for writ of certiorari.

The comments in the opening statement of which Petitioner is complaining are as follows:

1.   "I submit to you that you won't hear that what he was doing was appropriate or good or part of the, quote, close quotes, synergy, or that even some of his activities were legal, they were illegal and nobody is going to argue that." App. 253, line 21; p. 254, line 1.

2.   "But there are other things that could happen in which you have got to say, particularly in a drug case, 'Yes. I do drugs' or 'yes, I might have sold drugs.'" App. 254, lines 4-7.

(Petition and Response).

27

The comments in the closing argument that Petitioner alleges conceded his guilt are

as follows:

> 1. "You can look at all this other stuff [App. 1687-88], these baggies that somehow did not become baggies, but they are evidence, clearly, the same as words, evidence of these things, that Marshall Miller was engaged in criminal activity, no ifs, ands or buts." App. 1693, lines 15 -20.

> 2. "Is Marshall guilty of manufacturing crystal meth, probably so. Is he guilty of distributing, probably so." App. 1695, lines 4-6.

> 3. "He may be guilty of other crimes, but not the conspiracy." App. 1696, lines 9-10.

> 4. "I'm not asking you to look at whether or not Marshall Miller is innocent. He is certainly by no means that." App. 1700, lines 13-15.

(Id.)

At the PCR hearing, trial counsel testified as follows:

> . . . What is being critiqued as the strategy that was taken at this trial. I knew before I got up and did an opening statement, that, number one, they were gonna use Mr. Miller's full confession. I knew they had potentially twenty-something witnesses and literally a mountain of evidence. Uh—there was no question in my mind they were going to be able to show that Mr. Miller was involved in drug activity.

> Uh —what the whole trial strategy was, and it was said in the opening statement, nobody was gonna argue he was a Boy Scout, he was not looking for his merit badge. Nobody's gonna say everything he did was polite, appropriate, or even legal. But we're trying here is a conspiracy. The objective in the trial strategy was to convict him of a lesser-included offense, uh, because they had not only his statement, which pretty much sealed the deal, but they had a mountain of other

evidence

Uh—there were a lot of things that were — if you read the opening statement in context, I'll let anybody stand behind that because the argument was, it's not a conspiracy.

I think one of the analogies I used was, if we were all going home and four of us were speeding, we might all be speeding, we might be all together, but that doesn't mean there's a conspiracy to speed. And many of these people, Mr. — Mr. Miller didn't even know some of these people. And there was no question these people were drug users; they were crystal meth. users. Uh — some of 'em had used crystal meth. to the point they didn't know how to tie their shoes.

But that's what their case relied on; that these people were not reliable. Or, I think I made the statement that these were the kind of people who were sold another soul. And they were being offered rewards, and now they're all of a sudden the darlings of the Attorney General's Office but they were dirt bags yesterday, how could you trust them? That was  the —the strategy of the trial to proceed with that.

And I wanted them, to a certain extent, to have all these other people involved in drug activity. I didn't have a problem with all these other people having drugs in their possession.

It was part and parcel of not only the opening, the closing, the trial itself. They never found one iota of drugs on Mr. Miller. They didn't find the apparatus on Mr. Miller. What they had was evidence that he was friends with them; they had plenty of evidence he had used drugs with him. They were — I think even his alleged partner, a Mr. Powell, was gonna testify he had cooked with Mr. Miller. Uh — there were many people who were gonna say Mr. Miller was involved in  drugs.

But the  point is, these people were so messed up they couldn't tie their shoes; they're not capable of forming a — a conspiracy.

Uh—one of the things I used for my closing was — and I know what the record says, but you had to be there. The irony of it, Mr. Miller's a big

drug lord. It wasn't an admission he was a drug lord, it was a — an ironical, rhetorical statement of, the AG's office alleges he's a drug lord but yet, look where he lived. I  mean —and we had the pictures; I'm holding pictures up. He lived in a very, very, very meager situation. He was not living in, like you see the — I've forgotten the — the movie,  but you know, like the drug pins. That's what they were trying to make him to be.

He gave money for a friend's funeral. He bought people's Christmas presents. This was a nice guy, not some evil drug lord. That was the — the irony of it. And some of it was rhetorical and — and ironic in terms of — of, he's a big drug lord, yet, take a look at this. Because, uh, the pictures showed that he was very — living a very meager existence. This guy was not driving around in Rolls Royces and Lamborghinis, he was helping his friends which meant he was a nice guy. That was the contradiction of what I wanted the jury  to pick up is, this is a nice guy who's helped people. But, because they got in trouble, they're gonna dump on him.

Q. So you're

A. That was the strategy.

Q. --so your trial strategy was essentially you have to prove conspiracy. Even if he was using drugs, you would still have to show that he had conspired with all these giant groups of people to — to make — to make meth.

A. Correct; I— in all — in all honesty, I would have been happy had they convicted him of using drugs or selling drugs. That carried a lot less than twenty-five years, uh, because I knew I had a confession I had to deal with once the Judge ruled against it. Uh —I was going for the lesser of several evils. That was the only chance I thought Marshall had at that stage.

(App. 2086-2090).

 The PCR court held the following with respect to this issue, quoted verbatim:

## Conceding Applicant's Guilt During the Trial

Applicant contends that trial counsel was ineffective for conceding that he was guilty during trial counsel's opening and closing statements. Applicant particularly notes trial counsel's opening statement of "I submit to you that you won't hear that what he was doing was appropriate or good or part of the "Synergy" or that even some of his activities were legal. They were illegal and nobody is going to argue that." Tr. p. 253, lines 18-25- p. 254, line 1. As well as trial counsel's closing statement of ". . . I submit to you, but what does this mean, evil Marshall do, this drug lord?" Tr. P. 1689, line 25-p. 1690; line 1; and "Why would this evil, mean drug lord who controlled these people pay for somebody's funeral" he was also giving them dope, fronting it loaning it, and it came out how much money these people owed him." Tr. p. 1690,. lines 7-11. Applicant also notes several other statements given by trial counsel during his opening and closing statements, those challenged statements are listed on page 3 of the attachments to the Applicant's PCR application.

Trial counsel testified at the PCR hearing that the goal of his opening and closing statements was to challenge the State's evidence that there was a drug conspiracy–it wasn't disputed that the case dealt with drug users, but rather that there was no evidence of a conspiracy to traffic the drugs. Trial counsel also stated that his opening statement must be read and taken as a whole.

This Court finds that trial counsel was not ineffective and did not admit that the Applicant was guilty in his opening and closing statements. Both statements must be read as a whole. This Court agrees with trial counsel that he was being rhetorical based on the Applicant's damning statement he gave to the police and the amount of witnesses that were drug users and buyers. This Court also finds that trial counsel's goal was to challenge the state's conspiracy

evidence. Therefore this allegation is denied.

(App. 2122-2123).

As set forth above, the PCR court found that trial counsel's statements taken as a whole did not admit that Petitioner was guilty. Trial counsel testified that he had no doubt the State was going to be able to show that Petitioner was involved in the drug activity especially after the trial judge ruled that the statement/confession could come into evidence. Therefore, counsel testified he was being rhetorical and made a strategic decision to try and show Petitioner was not involved in a conspiracy. The PCR court found that counsel's goal was to challenge the state's conspiracy which was a strategic decision. Courts are instructed not to second guess an attorney's trial strategy and tactics. Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir.1977); Stamper v. Muncie, 944 F.2d 170 (4th Cir.1991). Where counsel articulates valid reasons for employing a certain strategy, such conduct is not ineffective assistance of counsel. See Daniels v. Lee, 316 F.3d 477, 491 (4th Cir.2003)."Judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. Counsel's strategy was to persuade the jury that Petitioner was not involved in

a conspiracy, and thus not subject to a twenty-five year sentence.[5]  The PCR court,

applying the deferential standard for evaluating strategy decisions by trial counsel,

found counsel not ineffective. Its decision was not contrary to or an unreasonable

application of applicable Supreme Court precedent.[6] See <u>Strickland</u>, 466 U.S. at 689

---

[5] As previously discussed, Petitioner did not show for his jury trial and was tried in his absence.

[6] The Fourth Circuit in <u>Young v. Catoe</u>, <u>supra</u> addressed this issue holding as follows:

> Our subsequent decision in <u>Bell v. Evatt</u>, 72 F.3d 421 (4th Cir.1995), makes the
> point more precisely. In that case, the petitioner's lawyer, attempting to secure a
> guilty-but-mentally-ill verdict for his client on charges of murder and kidnaping,
> explicitly told the jury during his closing argument that his client was guilty of the
> latter. We rejected the petitioner's claim that counsel had represented him
> ineffectively, noting that the evidence supporting the kidnaping charge was
> "overwhelming," <u>id.</u> at 429, and that
>
>> [i]t was important for the defense to retain some credibility so that
>> the jury would be sympathetic to the defense witnesses testifying
>> that Bell deserved mercy....[T]he decision to pursue a GBMI
>> verdict was a strategic one that Bell and his trial counsel agreed
>> to.... All indications lead us to conclude that the decision to
>> concede his guilt was a rational one.... Id. at 428 (internal
>> quotation marks omitted).
>
> <u>Clozza</u> [<u>Clozza v. Murray</u>, 913 F.2d 1092 (4th Cir. 1990)]and <u>Bell</u> stand for the
> proposition that, on occasion, it is best to risk losing the battle in the hope of
> winning the war. "There is a distinction which can and must be drawn between a
> statement or remark which amounts to a tactical retreat and one which has been
> called a complete surrender." <u>Clozza</u>, 913 F.2d at 1099. As we there-after
> recognized, "[s]ome remarks of complete concession may constitute ineffective
> assistance of counsel, but tactical retreats may be reasonable and necessary within
> the context of the entire trial, particularly when there is overwhelming evidence
> of the defendant's guilt." <u>Bell</u>, 72 F.3d at 429.

<u>Young v. Catoe</u>, 205 F.3d 750, 760 (4th Cir. 2000), citing <u>Bell v. Evatt</u>, 72 F.3d 421 (4th Cir.
1995). Here, counsel's decision, in the face of overwhelming evidence, was not a complete
surrender but a tactical retreat, strategy.

("... a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time). Because of the difficulties inherent in making the evaluation, a court must "... indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption. . . " Id. The PCR court's findings were not contrary to, nor did they involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. The findings were also not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  See 28 U.S.C. § 2254(d)(1) & (2). Accordingly, it is recommended that Ground Three be denied and dismissed.

**Ground Four**

In Ground Four, Petitioner argues ineffective assistance of trial counsel in failing to object to the reasonable doubt and circumstantial evidence charge. In his response, Petitioner argues as follows:

> Following the United States Supreme Court ruling in Cage v. Louisiana, 498 U.S. 39 (1990), and based on the Court's ruling in Holland v. United States, 348 U.S. 121 (1954), the South Carolina Supreme Court, in State v. Manning, 409

34

> S.E.2d 372 (S.C. 1991), cert. denied, 503 U.S. 914 (1992), reversed, remanded, and limited the reasonable doubt instruction to be issued in South Carolina to criminal trials to the following:
>
> "[a] reasonable doubt is the kind of doubt that would cause a reasonable person to hesitate to act." Manning, 409 S.E.2d at 375.
>
> The trial court here issued the following hybrid instructions concerning reasonable doubt and circumstantial evidence in part:
>
> "Reasonable doubt is simply a doubt for which you find to be reasonable." App. 1769
>
> and ;
>
> . . . [n]ot only must the circumstantial evidence be proved beyond a reasonable doubt, but they must point conclusively, that is, to a moral certainty to the guilt of the accused. They must wholly and in every particular be perfectly consistent with each other and they must further be absolutely inconsistent with any other reasonable hypothesis than the guilt of the accused." App. 1776-1777.

(Doc. #44 at 62-63).

Petitioner argues that the trial court in his case set the bar at an impossible level and shifted the burden from the State to Petitioner. Petitioner argues that the "'moral certainty' element of the jury charge invited the jury to convict him on proof below that required by the Due Process Clause." (Doc. #44 at 63). Petitioner relies on the

case of <u>State v. Manning</u>, 305 S.C. 413, 409 S.E.2d 372 (S.C. 1991).[7]

Respondent argues that the PCR court correctly ruled that in light of the jury instructions as a whole, Petitioner has failed to establish ineffective assistance of counsel as he has failed to show that the jury instructions were erroneous, and even if they were erroneous, that they were so prejudicial that it affected the outcome of the entire trial.

The full context of the portion of the charge Petitioner complains is as follows:

> Where it is undertaken by the prosecution in a criminal case to prove the guilt of an accused person by circumstantial evidence, not only must the circumstances be proven beyond a reasonable doubt, but they must point conclusively, that is, to a moral certainty to the guilt of the accused. They must wholly and in every particular be perfectly consistent with each other and they must further be absolutely inconsistent with any other reasonable hypothesis than the guilt of the accused.

(Tr. 1776-77).

Counsel did not object to the trial court's reasonable doubt instructions. He testified at the PCR hearing that he was satisfied with the judge's instructions on reasonable doubt. Trial counsel testified that it did not concern him that the trial judge

---

[7] <u>State v. Manning</u> suggested that the trial bench give no further definition of reasonable doubt than that "a reasonable doubt is the kind of doubt that would cause a reasonable person to hesitate to act," although the Court did not mandate that charge. <u>Manning</u>, 305 S.C. 413, 409 S.E.2d 372; <u>see</u> <u>also</u> <u>State v. Johnson</u>, 315 S.C. 485, 445 S.E.2d 637–638 (S.C.1994) *overruled on other grounds*, <u>State v. Jackson</u>, 301 S.C. 49, 389 S.E.2d 654 (1990).

used the phrase "moral certainty" in the instruction, and that he viewed "moral certainty" as stronger than reasonable doubt. Specifically, counsel testified when asked if he saw any issue with the reasonable doubt instruction particularly with the moral certainty aspects of it as follows:

> No. As a matter of fact, I viewed that to be beneficial. And again, sometimes you have to hear the intonation because, uh, what Judge Sanders said- - and I have had cases before him, uh, before- - the way he's-he gave his instruction on moral certainty, you have to be convinced of someone's doubt to a moral certainty. Not according to morals, but to moral certainty. I use both words together.
>
> That means a very firm, heartfelt, and moral conviction that there is a doubt there or that he is- - excuse me– guilty. And for someone to be morally convinced someone is guilty to me is a higher standard than an average charge. I thought it was a favorable charge.

(Tr. 2093).

This issue was raised and ruled upon by the PCR court and raised in the petition for writ of certiorari. The PCR held the following:

> Applicant alleges that trial counsel should have objected to the reasonable doubt instructions that were given to the jury. His particular grievance is with the part of the instruction that references "moral certainty" and "not an attempt to define for you what is meant by reasonable doubt."
>
> This Court finds that trial counsel was not ineffective in his failure to object to the reasonable doubt instructions. While this charge has been modified since the Applicant's trial, that modification is not enough to warrant a reversal had trial counsel objected. Therefore, this allegation

is denied.

(App. 2124-25).

Substantial deference is to be given to the state court's findings of fact. Evans v. Smith, 220 F.3d 306, 311–312 (4th C-ir.2000), cert. denied, 532 U.S. 925, 121 S.Ct. 1367, 149 L.Ed.2d 294 (2001) ["We ... accord state court factual findings a presumption of correctness that can be rebutted only by clear and convincing evidence], cert. denied, 532 U.S. 925, 121 S.Ct. 1367, 149 L.Ed.2d 294 (2001); Bell v. Jarvis, 236 F.3d 149 (4th Cir.2000) (en banc), cert. denied, 112 S.Ct. 74 (2001). In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). However, although the state court findings as to historical facts are presumed correct under 28 U.S.C. § 2254(e)(1), where the ultimate issue is a mixed question of law and fact, as is the issue of ineffective assistance of counsel, a federal court must reach an independent conclusion. Strickland v. Washington, 466 U.S. 668, 698, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir.1993), cert. denied, 510 U.S. 984, 114 S.Ct. 487, 126 L.Ed.2d 437 (1993) (citing Clozza v. Murray, 913 F.2d 1092, 1100 (4th Cir.1990), cert. denied,

499 U.S. 913, 111 S.Ct. 1123, 113 L.Ed.2d 231 (1991)). Nevertheless, with regard to

the ineffective assistance of counsel claim that was adjudicated on the merits by the

South Carolina state court, this Court's review is limited by the deferential standard

of review set forth in 28 U.S.C. § 2254(d), as interpreted by the Supreme Court in

Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). See Bell

v. Jarvis, supra; see also Evans, 220 F.3d at 312 [Under § 2254(d)(1) and (2), federal

habeas relief will be granted with respect to a claim adjudicated on the merits in state

court proceedings only where such adjudication "resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established federal

law, as determined by the Supreme Court of the United States", or "resulted in a

decision that was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding"]. Accordingly, this Court recognizes

this deferential standard of review in considering this issue.

    With respect to Petitioner's contention that his counsel was ineffective for

failing to object to the trial court's instruction, the Fourth Circuit has held that,

> Although due process requires that the government prove
> each element of an offense beyond a reasonable doubt, the
> Constitution neither requires that trial courts define
> reasonable doubt nor prohibits them from doing so. And,
> when a trial court elects to define reasonable doubt, the
> Constitution does not mandate a particular definition.
> Rather, the question is whether the instruction, taken as a
> whole, correctly conveyed the concept of reasonable doubt

to the jury.

Baker v. Corcoran, 220 F.3d 276, 292 (4th Cir.2000) (citations omitted).

Here, Petitioner relies on State v. Manning[8] and asks us to read a portion of the charge in isolation. Rather, the Due Process clause dictates that we read the charge in its entirety.[9] The trial judge charged the jury several times that the State must prove the guilt of the defendant beyond a reasonable doubt. (Tr. 1769, 1770, 1774, 1776-77, 1780, 1783, 1786-87, 1788-89, 1792, and 1796-97). The trial judge described and defined circumstantial evidence, (tr. 1775-77, 1786), and explained to the jury that the State must prove the circumstantial evidence beyond a reasonable doubt. (Id.). The Supreme Court of the United States held that a definition of reasonable doubt is not Constitutionally imposed, opining: "[S]o long as the court instructs the jury on the necessity that a defendant's guilt be proved beyond a reasonable doubt, the

---

[8] In 1991, the South Carolina Supreme Court adopted the Cage "could have" standard in State v. Manning, 305 S.C. 413, 409 S.E.2d 372 (1991), the case upon which Petitioner relied. The Court ruled a reasonable doubt jury charge unconstitutional because the judge equated reasonable doubt with a "moral certainty" standard and used a definition of circumstantial evidence which required the jury to "seek some reasonable explanation of the circumstances proven other than the guilt of the [d]efendant and if such reasonable explanation can be found [the jury] would find the [d]efendant not guilty." Id. at 416, 409 S.E.2d at 374.

[9] The Due Process Clause requires the government to prove a criminal defendant's guilt beyond a reasonable doubt, and trial courts must avoid defining reasonable doubt so as to lead the jury to convict on a lesser showing than due process requires. In these cases, however, we conclude that "taken as a whole, the instructions correctly conveyed the concept of reasonable doubt to the jury." Holland v. United States, 348 U.S. 121, 140, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954).

Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof." Victor v. Nebraska, 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994). Therefore, Petitioner has not carried his burden of showing that his counsel was ineffective for failing to object to the jury instruction. However, even assuming *arguendo* that there was error, Petitioner has not shown that there is a reasonable likelihood that the jurors who determined his guilt applied the instructions in a way that violated the Constitution.[10] See Estelle v. McGuire, 502 U.S. 62, 112 S.Ct. 475 (1991) (clarifying that the proper standard is whether there is a reasonable likelihood the jury applied the challenged instruction in a way that violated the constitution). The state court findings were not contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the State court proceeding. See 28 U.S.C. § 2254(d)(1) & (2). Accordingly, it is recommended that Respondent's motion for summary judgment be granted with regard to Ground Four.

---

[10] While an objection may be needed where you have objectionable conduct, it is not a violation of the due process if a Petitioner fails to show that the remarks so prejudiced  his substantial rights that he was denied a fair trial. See United States v. Lighty, 616 F.3d 321, 359 (4th Cir.2010);  Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) ( *quoting* Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)).

41

**Ground Five**

In Ground Five, Petitioner alleges counsel should have objected to "improper opinion testimony of witnesses not qualified as an expert." (Petition). Specifically, Petitioner asserts that SLED Agent Sonnefeld and Greenwood County Sheriff Major Ronnie McAllister interjected inadmissible opinion testimony on scientific evidence involving chemicals without being qualified as an expert. Respondent asserts that Petitioner takes the testimony out of context, and the state PCR court's rejection was a reasonable application of Strickland. This issue was raised and ruled upon by the PCR court and raised in the petition for writ of certiorari.

Petitioner asserts that the improper testimony of SLED Agent Sonnefeld was as follows:

> ". . . [I] believe a five gallon gas container containing some chemicals. There is a bag that contains more chemicals . . . there is a coffee bean grinder that had some residue in it." (App. 305, lines 19-25).

> ". . . this was a plastic container that had some chemicals in it." App. 306, lines 11-12.

> "We just identified it as what I thought it was." Id., line 21.

Petitioner alleges the improper opinion testimony of Major Ronnie McAllister was as follows:

> " ...[a]nd analysis was conducted by SLED and it was deemed to be anhydrous ammonia contained in the tank." (App. 445, lines 21-23).

42

In his response, Petitioner asserts that no tests were performed in which Agent Sonnefeld or Major McAllister were qualified as experts to testify. Additionally, Petitioner argues that "Major McAllister's testimony in addition to being improper opinion testimony, was shown to be false when SLED's Forensic Chemist (Quincy Ford) actually testified that there was no way to confirm a presumptive test on the tank, App. 606, that SLED would not ever perform an analysis on that tank." (Doc. #44, p. 68).

The portion of Agent Sonnefeld's testimony that Petitioner complains is set forth in full context in the following colloquy:

Q:    The items that are in this picture, could you describe those for us?

A:    Yes, sir. This right here is the coffee bean grinder, these are the coffee filters, the shop towels, these were some latex gloves, and this is a box of salt and this was a plastics container that had chemicals in it.

Q:    All right. Now, were they all originally in this yellow bag that you see here?

A:    Yes, sir. We took them out so that we could see better.

Q:    All right. Now, you identified this red container as a gas can. Were you sure there was gas in it or did you just identify that as what you thought it was?

A:    We identified it as what we thought it was.

Q:    And are these six pictures all of basically the same items that were retrieved?

A:      Yes, sir, just as we took them out.

(Tr. 306).

Petitioner alleges that counsel should have objected to Major McAllister's testimony. After he was asked to identify evidence in three pictures from a tool box in State's Exhibit #5, Major McAllister testified as follows:

A:      This is an aluminum tool box commonly seen in the rear of pickup trucks and it is opened and down in the bottom of the tool box is a long gray tank which was later identified by SLED to contain anhydrous ammonia. Attached to the tank was a copper fitting, attached to the copper fitting was a rubber hose, and the rubber hose was run from the bottom of the aluminum box, into the truck bed area, out the back of the truck bed area to the tailgate of the truck.

Q:      What was done with that tank that day?

A:      The tank, we contacted the Greenwood County Hazmat Unit who handles hazardous materials for us, and the Hazmat Unit came out–well, first the truck was towed by a local wrecker service and then the Hazmat Unit came to the wrecker service and took possession of the anhydrous ammonia tank. It was transported out to the Greenwood Airport where the Hazmat Unit is stationed at, SLED was contacted, and analysis was conducted by SLED and it was deemed to be anhydrous ammonia contained in the tank...

(Tr. 445).

The testimony of SLED's Forensic Chemist, Quincy Ford[11], that Petitioner alleges proved Major McAllister's testimony to be false is as follows:

---

[11] Quincy Ford was qualified as an expert in the field of forensic drug analysis.  (Tr. 597-598).

44

On recross:

Q:    There is no way to confirm that analysis, is that correct, without keeping it or taking it to SLED?

A:    Generally we do not bring anhydrous ammonia tanks and analyze them at SLED. We can only do a presumptive test.

On redirect, Mr. Ford testified:

Q:    Can you explain what a presumptive test is?

A:    Well, basically in the case of anhydrous ammonia tanks the presumptive test is I just basically open up a tube, the tube has chemical in there that is very sensitive to anhydrous ammonia, and it will give you a specific color change. Upon that color change, if it turns the color indicated, then therefrom it's a presumptive test for anhydrous ammonia, and to be even more specific, that color test and those chemicals they are generally highly specific for anhydrous ammonia.

(Tr. 606-607).

The PCR court held as follows:

Failure to Object to "Opinion Testimony" of Agent Sonnefeld & Witness McCallister:

Applicant contends in allegations 2 & 3, supra, that trial counsel was ineffective for his failure to object to the testimonies of Agent Sonnefeld and witness McCallister because they offered opinion testimony and were not qualified as experts. Specifically, he alleges trial counsel should have objected to Agent Sonnefeld's testimony regarding chemicals in containers and chemical residue left in a coffee grinder, as well as her testimony of "We just identified it as what I thought it was." Tr. P. 306, line 21.

45

Applicant also alleges trial counsel was ineffective for not objecting to witness McCallister's testimony regarding the anhydrous ammonia tank. (See page 14 of the attachments to the PCR application).

This Court finds that trial counsel was not ineffective for his failure to object to the testimonies of Agent Sonnefeld and witness McCallister. This Court finds these allegations are also without merit. While Applicant claims that this testimony was prejudicial and an attempt to bolster the State's case, this Court finds that their testimonies were cumulative to the evidence presented in this trial. Therefore these allegations are denied.

(App. 2124).

The PCR court's determination that there was no error by counsel in not objecting to the testimonies and no associated prejudice was not an unreasonable application of federal law based on the facts.[12] The factual findings that the PCR court

---

[12] In State v. Mitchell, 731 S.E. 2d 889, (S.C. Ct. App. 2012), the South Carolina Court of Appeals held as follows:

" 'The admission or exclusion of evidence is a matter addressed to the sound discretion of the trial court and its ruling will not be disturbed in the absence of a manifest abuse of discretion accompanied by probable prejudice.' " State v. Fripp, 396 S.C. 434, 438, 721 S.E.2d 465, 467 (Ct.App.2012) (quoting State v. Douglas, 369 S.C. 424, 429, 632 S.E.2d 845, 847–48 (2006)). "Rule 701 of the South Carolina Rules of Evidence explains when lay witness testimony is admissible." Id. at 439, 721 S.E.2d at 467.

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which (a) are rationally based on the perception of the witness, (b) are helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) do not require special knowledge, skill, experience or training.

46

relied upon in denying this claim are supported by the record and are entitled to deference and a presumption of correctness. See Cagle v. Branker, 520 F.3d 320, 324 (4th Cir.2008); 28 U.S.C. §2244(e)(1); Evans v. Smith, 220 F.3d 306 (4th Cir. 2000). Also, as stated by the PCR court, the evidence was cumulative to other evidence. Again, giving due deference to the findings of the state court, the PCR court did not misapply federal law or unreasonably determine the facts in denying this ineffective assistance of counsel claim where the court found Petitioner failed to make a sufficient showing under the prejudice prong of Strickland. Accordingly, it is recommended that Ground Five be dismissed.

## Ground Six

In Ground Six, Petitioner alleges that the PCR court erred in not finding trial counsel ineffective for failing to move for a motion *in limine* for items[13] retrieved from Gene Saylor's house in Georgia and turned over to SLED in which the chain of custody was unreliable. Petitioner argues the chain of custody was in question because Mr. Saylors tampered with the evidence by acknowledging that he moved the items

_____

Rule 701, SCRE.

[13] The items included a black and silver four wheeled trailer with an air conditioned top, a yellow and black duffle bag, a red five-gallon jug, and a black plastic container with mason jars in it. (Tr. 538-39).

before turning them over to Agent Sonnefeld without contacting the Georgia authorities. Respondent argues that the state PCR court reasonably applied <u>Strickland</u> in denying relief.

This issue was raised and ruled upon by the PCR court and raised in the petition for writ of certiorari. The PCR court held as follows with regard to this issue:

<u>Failure to Move *in limine* Regarding Evidence Retrieved from Georgia</u>

> Applicant further alleges that trial counsel was ineffective for not making a motion *in limine* regarding the items that were seized from Gene Saylors house in Georgia and turned over to SLED. . . . Applicant claims that the chain of custody of these items was in question because Mr. Saylors "tampered" with the evidence [when] he acknowledged that he moved it and when Agent Sonnefeld arrived "without contacting the Georgia authorities" to retrieve the items from Mr. Saylors.

> The record reflects that Agent Sonnefeld went to Georgia accompanied by agents from the Georgia Bureau of Investigation. Tr. P. 303. Mr. Saylors testified that he received the items from the Applicant and then hid the[m]. He took the agents to where he hid them and Agent Sonnefeld transported them back to South Carolina. (See Tr. P. 538, line 22-p. 544, line 10). This Court finds this allegation is without merit and that trial counsel was not ineffective for not making a motion *in limine* regarding the chain of custody of these items because the chain of custody is complete. Therefore this allegation is also denied.

(Tr. 2124-2125).

The factual findings that the PCR court relied upon in denying this claim are

48

supported by the record and are entitled to deference in this action.  See  Cagle v. Branker, 520 F.3d 320, 324 (4th Cir.2008). Additionally, trial counsel testified that he did not think using a motion *in limine* was a good strategy because he did not want to aggravate a judge by making the motion *in limine* on something that does not affect his client. Counsel testified that in the overcall scheme of it, this was an insignificant piece of the puzzle and it is not good strategy[14] to aggravate the judge and keep drawing attention to something that may hurt your client. (Tr. 2103).  The PCR court's factual conclusions were not unreasonable based on the evidence presented at the PCR evidentiary hearing. Further, its decision did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States unreasonable application of federal law. Accordingly, it is recommended that Ground Six be dismissed.


**Grounds Seven, Eight, Nine, and Ten**

In Petitioner's Grounds Seven, Eight, Nine, and Ten, he asserts alleged errors by the PCR court.  In his Ground Seven, Petitioner claims the PCR court erred in

---

[14] Courts are instructed not to second guess an attorney's trial strategy and tactics. Goodson v. United States, supra; Stamper v. Muncie, supra. Where counsel articulates valid reasons for employing a certain strategy, such conduct is not ineffective assistance of counsel. See Daniels v. Lee, supra.

denying his request to access to discovery materials. In Ground Eight, Petitioner alleges the PCR court erred in denying him the right to amend his application to raise a constitutional claim that the assistant attorney general misrepresented facts about the State Grand Jury plea process during the <u>Jackson v. Denno</u> hearing. In Ground Nine, Petitioner alleges the PCR court erred when it denied him the right to amend his application to add an additional claim of ineffective assistance of counsel. In Ground Ten, Petitioner alleges the PCR court erred when it denied him the right to amend and raise a claim asserting that the BOP and the State of South Carolina forfeited jurisdiction.

Respondent argues that these grounds are not cognizable in this action as they concern the state PCR process and do not raise claims concerning federal habeas corpus relief. This court agrees. Alleged defects in state PCR proceedings are not cognizable in a federal habeas action. <u>Wright v. Angelone</u>, 151 F.3d 151 (4th Cir. 1998); <u>Bryant v. Maryland</u>, 848 F.2d 492, 493 (4th Cir 1998) (holding errors and irregularities in connection with state PCR proceedings are not cognizable on federal habeas review). Thus, it is recommended that summary judgment be granted for Respondent with regard to Grounds Seven, Eight, Nine and Ten.

## **CONCLUSION**

As set out above, a review of the record indicates that the petition should be dismissed. Therefore, it is RECOMMENDED that Respondent's motion for summary judgment (Doc. #29) be granted and the petition be dismissed without an evidentiary hearing.

It is FURTHER RECOMMENDED that all outstanding motions be deemed moot.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

July 15, 2016
Florence, South Carolina

**The parties' attention is directed to the important information on the attached notice**.

51